

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MAR 28 2011

PAMELA E. ROBINSON, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOY A. TONSOR, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-cv-1283 |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## OPINION and ORDER

Before the court is the Motion for Summary Judgment filed by Plaintiff (Doc. 17) and the Motion for Summary Affirmance filed by Defendant (Doc. 18). For the reasons set forth below, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.

### PROCEDURAL HISTORY

On January 26, 2006, Plaintiff applied for Disability Insurance Benefits (DIB) alleging a disability that began on January 1, 1980 (Tr. 81). Plaintiff's application for DIB was denied initially (Tr. 49) and upon reconsideration (Tr. 55). Plaintiff requested a hearing before an Administrative Law Judge (ALJ). ALJ Barbara J. Welsch issued an unfavorable decision on September 8, 2008 (Tr. 48). Plaintiff timely requested review. The Appeals Council denied review on November 10, 2008, rendering the ALJ's decision the final agency decision (Tr. 1). Plaintiff appealed to this Court and her arguments are centered on errors she believes the

ALJ made with respect to the evaluation of her migraine headaches and her capacity to perform light work.

## BACKGROUND

As indicated above, Plaintiff initially alleged an onset date of January 1, 1980 but now asserts an onset date of May 1, 1978. Her DIB insured status expired on June 30, 1981 when she was 29 years old. Thus, Plaintiff must show that she was disabled prior to that date in order to qualify for disability benefits.

Plaintiff was employed by CILCO from 1970 to 1977 as a secretary (she has a high school education). Medical records prior to 1981 are sparse as they relate to the medical conditions that Plaintiff alleges are disabling. She asserts that migraine headaches, hearing loss, and scoliosis contribute to her disability.

Prior to her onset date, in February, 1976, Plaintiff visited her gynecologist and complained on nausea, headaches, vomiting, and fatigue - she was 2 months pregnant. In April, 1976, she complained of a headache and in March, 1977, she complained of fatigue.

After her alleged on set date, on May 1, 1978, Plaintiff was admitted to Barnes Jewish Hospital for the evaluation of an enlarged spleen (splenomegaly). At the time, she complained of dizziness and tiredness for a year prior to the admission and she complained of headaches and shortness of breath when she became tired. Plaintiff was taking no medication. While physical examinations noted her spleen condition, no other medical conditions (except scholiosis) or abnormalities were noted. During her 12 day stay at the hospital, Plaintiff complained of headaches on two occasions. She was not given any prescriptions or medications for any

conditions. Subsequent medical visits related to Plaintiff's pregnancies (she has five children - four of whom were born prior to June 30, 1981).

After June 30, 1981, her date last insured, Plaintiff visited the Mayo Clinic (in 1986) related to hearing loss. At that time, she indicated episodes of dizziness and fatigue over the previous 11 years. In November, 1986 and a year later, Plaintiff underwent surgery in her left ear.

In September, 1995, Plaintiff complained of severe headaches, which correlated with her menstrual cycle, for 13 years or longer. In 2004, Plaintiff underwent surgery in her right ear related to hearing loss. In October, 2005, Plaintiff complained of migraine headaches, that had been occurring for the previous 16 years; doctor's notes indicated that she was taking Imitrex for the migraine headaches, as needed, but approximately once a month.

At a hearing before the ALJ on July 22, 2008, Plaintiff testified along with her husband, Mike Tonsor and a Vocational Expert, Dr. Lenaire. Plaintiff testified that she was referred to Barnes Jewish Hospital due to her migraine headaches, which, at the time, caused her to miss work and which she believed were related to her scoliosis. Over the course of the years, the headaches caused her to be "down for a day, two days" and caused her to be sick and dizzy. She also had two ear surgeries but is currently deaf in one ear and has 55-60 percent hearing in the other. Plaintiff quit her job as a secretary at CILCO in early 1977, a few months after the birth of her first child, because of her headaches. She was not employed after that time; however, she did some bookkeeping work for her husband's restaurant in the 1980s. When questioned about the scarcity of headache related

complaints and doctor's notes prior to 1981, Plaintiff stated that she primarily complaint about headaches and that, at the time, migraine headaches were not a diagnosis that would be reflected in her charts and that her headaches were treated as a symptom of tiredness and not the other way around.

Plaintiff's husband testified that from the time they were married, in 1974, Plaintiff missed work due to her headaches and due to back pain. He also testified that she went to Barnes Jewish Hospital for treatment of those headaches and that tests from that time period were inconclusive. Later on, she would have "spells" for which she would take aspirin.

The ALJ gave Dr. Lenaire a hypothetical question in order to evaluate Plaintiff's ability to work during the relevant time period. He assumed an individual between 27 and 29 years of age with a high school education, with past relevant work as a secretary, and who is limited to light and sedentary work. She also was limited to jobs that required no climbing or acute hearing. In Dr. Lenaire's opinion, she would be able to do her past relevant work as a secretary. She would also be able to do a variety of unskilled light and sedentary work like hand presser, housekeeper, hand washer, and ampoule sealer.

In her decision, the ALJ noted that agency doctors found that there was insufficient evidence to find that Plaintiff was disabled. Nonetheless, the ALJ found that her complaints of headaches represented a severe impairment, that her hearing loss, while not occurring prior to the date of last insures, also is a severe impairment, and that the scoliosis would be factored into her residual functional capacity. The ALJ went on to find that the medical records did not support

4

Plaintiff's claims of disabling migraine headaches and that she was not prescribed medication for the condition. Most of her doctor's visits were routine and related to her pregnancies; according to contemporaneous notes, her stay at Barnes Hospital was related primarily to splenomegaly and not necessarily headaches; and, physical examinations and x-rays revealed that her scoliosis was mild. Subsequent medical treatments did not reveal a focus on migraine headaches until March 2008, wherein Plaintiff's headaches were triggered by the consumption of various foods. Thus, the ALJ concluded that there were no disabling conditions during the relevant time period.

In tailoring the hypothetical to the vocational expert, the ALJ noted that her dizziness and fatigue was accounted for by limiting climbing and her hearing loss was compensated for by excluding jobs that required acute hearing. The ALJ further noted that while Plaintiff may not have been able to perform her past work, as she actually performed it (because it involved frequent lifting on 25 pounds) she could nonetheless perform her past work as a secretary as it is generally performed in the national economy. The ALJ further noted that she could have performed a full range of light work.

## STANDARD

To be entitled to disability benefits under the Social Security Act, a claimant must prove that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). To determine if the claimant is unable to engage in any substantial gainful activity, the Commissioner of Social Security engages in a factual

determination. *See McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir. 1980). The factual determination is made by using a five-step sequential analysis. 20 C.F.R. § 404.1520; *see also Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999).

In the first step, a threshold determination is made to determine whether the claimant is presently involved in a substantially gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is not under such employment, the Commissioner of Social Security proceeds to the next step. At the second step, the Commissioner evaluates the severity and duration of the impairment. 20 C.F.R. § 404.1520(c). If the claimant has an impairment that significantly limits her physical or mental ability to do basic work activities, the Commissioner will proceed to the next step. At the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work; and, if the elements on the list are met or equaled, he declares the claimant eligible for benefits. 20 C.F.R. § 404.1520(d).

If the claimant does not qualify under one of the listed impairments at Step Three, the Commissioner proceeds to the fourth and fifth steps. At the fourth step, the claimant's Residual Functional Capacity ("RFC") is evaluated to determine whether the claimant can pursue her past work. 20 C.F.R. § 404.1520(e)-(f). If she cannot, then, at Step Five, the Commissioner evaluates the claimant's ability to perform other work available in the economy. 20 C.F.R. § 404.1520(g).

Once a case reaches a federal district court, the court's review is governed by 42 U.S.C. 405(g), which provides, in relevant part, "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence,

shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Maggard*, 167 F.3d at 379 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The claimant has the burden to prove disability through Step Four of the analysis, *i.e.*, she must demonstrate an impairment that is of sufficient severity to preclude her from pursuing her past work. *McNeil*, 614 F.2d at 145. However, once the claimant shows an inability to perform her past work, the burden shifts to the Commissioner, at Step Five, to show the claimant is able to engage in some other type of substantial gainful employment. *Id.*

A court's function on review is not to try the case de novo or to supplant the decision of the Administrative Law Judge ("ALJ") with the Court's own assessment of the evidence. *See Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). A court must only determine whether the ALJ's findings were supported by substantial evidence and "may not decide the facts anew, reweigh the evidence, or substitute [its] own judgment" for that of the ALJ. *See Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Furthermore, in determining whether the ALJ's findings are supported by substantial evidence, credibility determinations made by the ALJ will not be disturbed "so long as they find some support in the record and are not patently wrong." *See Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

However, the ALJ must articulate reasons for rejecting or accepting entire lines of evidence. *Godbey v. Apfel*, 238 F.3d 803, 807-08 (7th Cir. 2000). The ALJ is required to "sufficiently articulate his assessment of the evidence to 'assure us that [he] considered the important evidence . . . and to enable us to trace the path of [his]

reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (*quoting Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

DISCUSSION

Plaintiff offers only two arguments: First that the ALJ failed to appropriately analyze her migraine headaches and second that the ALJ found that she retained the residual functional capacity to perform her past work and other light work.

The Court finds no error in the analysis of migraine headaches. Plaintiff is correct in noting that there is no particular Listing related to migraine headaches. However, the ALJ appropriately found that Plaintiff's condition also did not equal a listed condition. Plaintiff herself has pointed to no medical evidence that any condition meets or equals any Listing contained in the regulations. As the ALJ pointed out, the sparse medical records reveal that Plaintiff had routine gynecological visits and that her treatment at Barnes Jewish, notwithstanding her testimony, was primarily related to her enlarged spleen. Moreover, also as the ALJ pointed out, there is no evidence in the record that during the relevant time period that Plaintiff's headaches led to specific treatment or the prescription of medication. Thus, there was no medical evidence supporting Plaintiff's claim of a disabling condition during the relevant time period.

Even medical evidence after the relevant time period does not support a finding of disability. Plaintiff's subsequent complaints of migraine headaches did not extend prior to the 1980's; and, when she specifically indicated that she suffered from migraine headaches, during a consultative neurological examination in March, 2008, in her 20's, there was no diagnosis made with respect to her medical condition

during the relevant time period. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period."). The ALJ's determination is not patently wrong. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

The Court also finds no error in the ALJ's RFC analysis. As indicated above, prior to her date last insured, there is no medical evidence that would support a finding that Plaintiff's headaches were disabling. Records do not reveal that Plaintiff ever was hospitalized for headaches or that she received any prescription medication for migraine headaches. It is thus reasonable for the ALJ to conclude that Plaintiff's migraine headaches did not substantially limit her ability to work. *Simila v. Astrue*, 573 F.3d 503, 520-521 (7th Cir. 2009) (the ALJ need only include limitations that are supported by the record). The ALJ also accounted for Plaintiff's actual complaints and symptoms, dizziness, fatigue, scoliosis, and the beginnings of hearing loss. In tailoring her hypothetical to the vocational expert, the ALJ indicated restrictions in climbing and lifting, working at heights, and work that required acute hearing. Plaintiff offers no other limitations that the ALJ should have considered.

Moreover, Plaintiff appears to argue that the jobs cited by the ALJ are inappropriate in light of her past, and lucrative, job as a secretary. Plaintiff ignores the ALJ's initial finding that Plaintiff could perform her past relevant work as a secretary, as that job is generally performed in the national economy. *See Getch v. Astrue*, 539 F.3d 473, 482 (7th Cir. 2008) ("the ALJ need not conclude that the claimant is capable of returning to the precise job he used to have; it is enough that

the claimant can perform jobs substantially like that one"). With respect to Step Five of the process, the ALJ went on to find that there were a significant number of jobs in the national economy that Plaintiff could have performed. Plaintiff has offered no authority that these jobs need be commensurate with the pay and position she held at CILCO.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Plaintiff (Doc. 17) is DENIED and the Motion for Summary Affirmance filed by Defendant (Doc. 18) is GRANTED. The Clerk is directed to enter judgment in favor of Defendant

CASE TERMINATED

Entered this 28 day of March, 2011

                                                            JOE BILLY MCDADE
                                          Senior United States District Judge